OPINION *Page 2 
{¶ 1} Defendant-Appellant, Michael Bridge, appeals the judgment of the Allen County Court of Common Pleas, convicting him of one count of trafficking in cocaine and one count of possession of cocaine. On appeal, Bridge asserts that the jury instruction for complicity failed to state the correct legal premise resulting in plain error and that the jury verdicts were not supported by sufficient evidence. Finding that the jury instruction did not result in plain error and that the jury verdicts were supported by sufficient evidence, we affirm the judgment of the trial court.
 {¶ 2} In July 2005, the Allen County Grand Jury indicted Bridge for trafficking in cocaine in violation of R.C. 2925.03(A), (C)(4)(a), a felony of the fifth degree. Bridge entered a plea of not guilty to this charge.
 {¶ 3} In December 2005, a jury trial was held but the jury was unable to reach a verdict and the trial court declared a mistrial.
 {¶ 4} In January 2006, the July 2005 indictment was amended to include one count of possession of cocaine in violation of R.C.2925.11(A), (C)(4)(a), a felony of the fifth degree.
 {¶ 5} In February 2006, a jury trial was held and the following testimony was presented: *Page 3 
 {¶ 6} The State's first witness was Agent Rebecca Sterling with the Ohio Department of Public Safety, Investigative Unit (hereinafter referred to as "ODPS"). Agent Sterling testified that ODPS received many drug complaints occurring at various bars in the Lima, Ohio area; that on February 4, 2005, at approximately 9:00 p.m., she arrived at Cocoanuts[1], which was located on Main Street, and entered Cocoanuts with ODPS Agent Chris Moyers and Carolyn Stant, a college friend and Lima resident; while at Cocoanuts, Stant conversed with Bridge and asked him if he had any cocaine, to which Bridge responded that "he was headed to the Twist Shout and that he could hook * * * her up there" (tr. p. 151); and, that she, Stant, and Agent Moyers left Cocoanuts and went to the Twist Shout.
 {¶ 7} Agent Sterling continued that she, Stant, and Agent Moyers entered the Twist Shout together and sat with Bridge and his friends in the balcony area of the bar; that about thirty to forty minutes later, she, Stant, and Agent Moyers decided to leave and go to a bar Bridge owned called the Par 3; and, that she saw Bridge leave the Twist Shout, driving a dark colored Lincoln with Ohio registration, which she found out later was registered to Bridge.
 {¶ 8} Agent Sterling then indicated that she, Stant, and Agent Moyers arrived at the Par 3 and sat with Bridge and his friends in the back of the bar; that *Page 4 
later in the night, Agent Moyers pretended to be upset and walked away from the group; that she told Stant and Bridge that she and Agent Moyers needed to get to Kenton, Ohio, to purchase some cocaine; that she then asked Bridge if she could get forty dollars worth of cocaine to save her a drive to Kenton, to which Bridge responded that "he would check with his boys" (tr. p. 164); that Bridge then took his car keys and approached Eric Deal, who took the keys and went outside; that, while Bridge was handing his keys to Deal, Agent Moyers went outside the Par 3 before Deal went outside; that, after Deal went outside, she, Stant, and Bridge went towards the main entrance of the Par 3; that, at this point, Deal came back to the door and Bridge told her to step outside because "he had the stuff (tr. p. 165); that, once she left the Par 3, Deal placed a folded one-dollar bill in her hand in exchange for forty dollars; and, that once the exchange occurred, she went back inside the Par 3 and Bridge asked her if she "had been taken care of, to which she responded "yes." (Tr. p. 167).
 {¶ 9} Agent Sterling also identified the folded one-dollar bill, which Deal gave to her in exchange for the forty dollars, and indicated that inside the folded one-dollar bill was a white powder substance, which tested positive for cocaine.
 {¶ 10} The State's second witness was Carolyn Stant. Stant testified that she was a college friend of Agent Sterling and agreed to help familiarize Agent Sterling with the bars and people in Lima, Ohio; that she was not paid anything for *Page 5 
her participation and cooperation in this case; and, that on February 4, 2005, she, Agent Sterling, and Agent Moyers went to Cocoanuts, Twist Shout, and the Par 3. Stant also testified about the events of February 4, 2005, which comported with Agent Sterling's description. Stant also indicated that she never saw Bridge actually touch drugs other than a vial, which might have contained cocaine, that he inserted in her nose while she was sitting on his lap at the Twist Shout.
 {¶ 11} The State's final witness was Agent Chris Moyers of ODPS. Agent Moyers testified that on February 4, 2005, he was in Lima, Ohio, to gather information on alleged complaints for drug violations; that he went to Cocoanuts with Agent Sterling and Stant and then went to the Twist Shout; that while he was at the Twist Shout, he mentioned to one of Bridge's acquaintances that he wanted to go to the Par 3; that before he, Agent Sterling, and Stant left to go to the Par 3, they saw Bridge leave the Twist Shout in a dark colored Lincoln; that he, Agent Sterling, and Stant went to the Par 3 and sat with Bridge and his friends; that while he was at the Par 3, Agent Sterling told him to separate from the group and act like he was angry, so he left the group, went to the stage area, and then exited the building.
 {¶ 12} Agent Moyers continued that when he exited the Par 3, he waited by his vehicle for Agent Sterling and Stant; that while he was waiting, he saw Deal exit the bar, enter Bridge's dark colored Lincoln through the passenger front door, *Page 6 
reach around in the passenger compartment for a few seconds, and go back towards the Par 3; that a few minutes later, Agent Sterling and Stant left the Par 3 and entered his vehicle; that he then drove Stant back to her car at Cocoanuts; and, that while they were in front of Cocoanuts, he retrieved an evidence bag from his vehicle and Agent Sterling put the folded one-dollar bill inside the bag.
 {¶ 13} On cross-examination, Agent Moyers indicated that he did not see anything retrieved from Bridge's vehicle, but that he saw someone enter the vehicle; that he did not see the transaction between Agent Sterling and Deal occur; and, that he saw the cocaine after he, Agent Sterling, and Stant left the Par 3.
 {¶ 14} The State's final witness was Matthew Congleton, an employee of the Bureau of Criminal Identification and Investigation in Bowling Green, Ohio. Congleton testified that he performed the drug analysis on the folded one-dollar bill and that the substance contained inside weighted 0.46 grams and contained cocaine, which is a schedule II illegal substance.
 {¶ 15} After Congleton testified, Bridge moved for judgment of acquittal under Crim.R. 29, which was overruled, and did not present any evidence. After closing arguments, the trial court read instructions to the jury including the following instruction on the definition of complicity:
 When two or more persons have a common purpose to commit a crime, and one does one part and a second performs another, those acting together are equally guilty of the crime. *Page 7 If you find beyond a reasonable doubt that Michael A. Bridge knowingly aided, helped, assisted or encouraged another in the commission of trafficking in cocaine, he is to be regarded as if he was the principal offender and is just as guilty as if he personally performed every act constituting trafficking in cocaine.
 {¶ 16} After the jury deliberated, it found Bridge guilty on both counts. The trial court subsequently sentenced Bridge to two years of community control.
 {¶ 17} It is from this judgment Bridge appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE JURY INSTRUCTION FOR COMPLICITY FAILED TO STATE THE CORRECT LEGAL PREMISE RESULTING IN PLAIN ERROR.
 Assignment of Error No. II THE VERDICTS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 Assignment of Error No. I {¶ 18} In his first assignment of error, Bridge argues that the trial court erred when it instructed the jury on the definition of complicity. The record reflects that neither Bridge nor the State submitted proposed instructions to the trial court. And, no objections were raised when the trial court presented the instructions to the jury.
 {¶ 19} Crim.R. 30(A) provides: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the *Page 8 
jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Thus, "[a]bsent plain error, the failure to object to improprieties in jury instructions, as required by Crim.R. 30[(A)], is a waiver of the issue on appeal."State v. Underwood (1983), 3 Ohio St.3d 12, 13.
 {¶ 20} "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. Under the plain error standard, the appellant must demonstrate that, but for the error, the outcome of his trial would clearly have been different. State v. Waddell,75 Ohio St.3d 163, 166, 1996-Ohio-100, citing State v. Moreland (1990),50 Ohio St.3d 58, 62; see also, e.g., State v. Recker, 3d Dist. No. 12-05-21,2007-Ohio-216 (examining jury instructions under plain error standard).
 {¶ 21} Here, Bridge argues that the trial court should have relied on Section 523.03 of the Ohio Jury Instructions and instructed the jury on the definition of complicity as follows:
 Before you can find the defendant guilty, you must find beyond a reasonable doubt, that on or about the 4th day of February, 2005, in Allen County, Ohio, the defendant knowingly sold or offered to sell a Schedule II controlled substance, to wit: cocaine or aided or abetted another in committing the offense of trafficking in cocaine.
(Bridge App. Brief p. 7). Bridge further argues that the trial court should have supplemented the foregoing instruction by adding, under the Ohio Supreme *Page 9 
Court's pronouncement in State v. Johnson, 93 Ohio St.3d 240, syllabus,2001-Ohio-1336, that "aided or abetted" means "supported, assisted, encouraged, cooperated with, advised or incited."
 {¶ 22} In response, the State argues that the instruction for complicity has been upheld by the Ohio Supreme Court in State v.Coleman (1988), 37 Ohio St.3d 286, wherein the Court provided:
 With regard to complicity, the judge gave the following instruction:
 "If you find beyond a reasonable doubt that Alton Coleman purposely aided, helped, assisted, encouraged or directed himself with another, in the commission of aggravated murder, or any of the crimes charged in the indictment, he is to be regarded as if he was the principal offender, and is just as guilty as if he personally performed every act constituting the offense. * * * ."
Id. at 290.
 {¶ 23} Jury instructions must be considered as a whole. State v.Price (1979), 60 Ohio St.2d 136, certiorari denied (1980), 446 U.S. 943. When the jury instructions in this case are read as a whole, we cannot find that but for the alleged error in the jury instruction on complicity, the outcome would clearly have been different. As such, any error in the jury instruction on complicity does not reach the level of plain error. Accordingly, Bridge's first assignment of error is overruled. *Page 10 
 Assignment of Error No. II {¶ 24} In his second assignment of error, Bridge argues that the evidence is insufficient to prove beyond a reasonable doubt that he was guilty of trafficking and/or possessing cocaine. To support his claim, Bridge argues that the evidence demonstrates he merely put Agent Sterling and Stant in touch with someone who could sell cocaine. Bridge also argues the State did not present any evidence that he possessed cocaine or that cocaine was retrieved from his car.
 {¶ 25} When an appellate court reviews the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1981),61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355.
 {¶ 26} Bridge claims that the evidence is insufficient to prove beyond a reasonable doubt that he was guilty of trafficking cocaine. The drug-trafficking statute at issue, R.C. 2925.03(A)(1), provides in part as follows: "No person shall knowingly do any of the following * * * [s]ell or offer to sell a controlled substance * * *." The term "sale" has the same meaning as in R.C. 3719.01(AA). See R.C. 2925.01(A). Thus, for purposes of R.C. 2925.03(A)(1), "sale" means: *Page 11 
deliver, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, agent, servant, or employee. See R.C. 3179.01(AA); State v. Sifred, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶ 44.
 {¶ 27} Here, Agent Sterling testified that after Agent Moyers pretended to be upset and walked away from the group, she asked Bridge if she could get forty dollars worth of cocaine to save her a drive to Kenton, Ohio, to which Bridge responded that "he would check with his boys." (Tr. p. 164). Agent Sterling noted that Bridge then took his car keys and approached Eric Deal, who took the keys and went outside, where Agent Moyers saw Deal enter Bridge's vehicle and reach around inside the passenger compartment for a few seconds. Agent Sterling also noted that when Deal came back to the entrance of the Par 3, Bridge told her to step outside, because "he had the stuff (tr. p. 165) and that once she went outside the exchange for the cocaine occurred between her and Deal. Finally, Agent Sterling testified that after she went back inside the Par 3, Bridge asked her if she "had been taken care of, to which she responded "yes." (Tr. p. 167).
 {¶ 28} The foregoing evidence against Bridge is circumstantial in nature. But it is widely accepted that circumstantial and direct evidence have the same probative value. See Jenks, 61 Ohio St.3d 259, at paragraph one of the syllabus. After viewing the circumstantial evidence presented in a light most favorable to *Page 12 
the prosecution, we conclude that the evidence is sufficient to support Bridge's conviction for trafficking cocaine. This is because the evidence, if believed, could convince a rational trier of fact of Bridge's guilt beyond a reasonable doubt.
 {¶ 29} Bridge also claims that the evidence presented at trial is insufficient to prove beyond a reasonable doubt that he was guilty of possessing cocaine. The drug-possession statute at issue, R.C.2925.11(A)(1), provides: "No person shall knowingly obtain, possess, or use a controlled substance." For purposes of this offense, "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); State v. Smith, 3d Dist. No. 8-04-40, 2005-Ohio-3233, ¶ 6.
 {¶ 30} As noted above, Agent Sterling testified that after she asked Bridge if she could purchase cocaine for Agent Moyers, Bridge gave his car keys to Eric Deal, who took the keys and went outside to Bridge's vehicle, where Agent Moyers saw Deal enter Bridge's vehicle and reach around inside the passenger compartment for a few seconds. Agent Sterling also noted that when Deal came back to the entrance of the Par 3, Bridge told her to step outside, because "he had the stuff (tr. p. 165) and that once she went outside the exchange for the cocaine occurred between her and Deal. Finally, Agent Sterling testified that after she *Page 13 
went back inside the Par 3, Bridge asked her if she "had been taken care of, to which she responded "yes."
 {¶ 31} The evidence related to the cocaine-possession charge is also circumstantial in nature. And we find, after viewing this evidence in a light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we conclude Bridge's conviction for possession of cocaine is supported by sufficient evidence.
 {¶ 32} For the aforementioned reasons, Bridge's second assignment of error is overruled.
 {¶ 33} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW and WILLAMOWSKI, JJ., concur. r
[1] Throughout the record, Cocoanuts is also referred to as the Crab Shack. *Page 1