OPINION *Page 2 
{¶ 1} The defendant-appellant, Miranda K. Keckler, appeals the judgment of the Hardin County Common Pleas Court convicting her of tampering with evidence and possession of criminal tools and sentencing her to two years and eleven months in prison.
 {¶ 2} On October 22, 2006, Glenda Williams awoke to use the restroom. As she walked toward the restroom, she noticed her son, Tyler McClaren, lying on a mattress in the back bedroom of her mobile home. She also noticed Keckler "fixing something underneath a light." Glenda waved to Tyler, who acknowledged her.
 {¶ 3} When Glenda came out of the restroom, she looked into the bedroom and noticed that Tyler was not breathing and had turned a bluish color. As Glenda watched, Keckler continued to inject the contents of a syringe into Tyler's body. Glenda observed empty pill capsules and other syringes in the room. Glenda began to scream and stated she was going to call the police. She went to the living room and used the telephone to call the police and several other people. During this time, Glenda observed Keckler as she picked items off the floor and placed them in a paper bag. Glenda indicated that the cord on the phone was very long. *Page 3 
 {¶ 4} By the time paramedics arrived, Tyler had come to and gone outside.[1] Keckler apparently remained in Tyler's bedroom while responding police officers evaluated Tyler's condition and talked with Glenda outside. Glenda brought the detective, Marc Coffman, into her home and escorted him to Tyler's bedroom. After obtaining Glenda's permission to search the room, the detective did a quick search, which revealed nothing. Apparently, both Glenda and the detective questioned Keckler about where any drug-related items were. At first, Keckler told the detective she did not know, but then she reached into the closet,[2] pulled out a paper bag, and dumped its contents on the rug. The contents of the bag included multiple empty syringes, empty gel tab capsules, marijuana roaches, and bindles. Eventually, Tyler refused treatment and left the scene with his aunt and uncle. Keckler was arrested that day.
 {¶ 5} On November 20, 2006, the Hardin County Grand Jury indicted Keckler on three charges: Count One, tampering with evidence, a violation of R.C. 2921.12(A)(1), a third-degree felony; Count Two, possession of criminal tools, a violation of R.C. 2923.24(A), a fifth-degree felony; and Count Three, *Page 4 
possessing drug abuse instruments, a violation of R.C. 2925.12(A), (C), a first-degree misdemeanor. Keckler pled not guilty to the charges at arraignment, and the case proceeded to bench trial on January 16, 2007, after Keckler waived her right to a jury trial.
 {¶ 6} In its case in chief, the state presented testimony from four witnesses; Robert Vogel, a patrolman with the Kenton Police Department; Glenda Williams; Marc Coffman, the investigating detective with the Kenton Police Department; and Jeff Roman, Keckler's probation officer. The state moved into evidence three exhibits without objection. At the close of the state's case, Keckler made a motion for acquittal pursuant to Crim.R. 29, which the trial court granted as to count three, but denied as to counts one and two.
 {¶ 7} In her case in chief, Keckler presented testimony from Amanda Williams. The court admitted into evidence Stipulated Exhibit A, which was the lab report from BCII. Keckler renewed her Crim.R. 29 motion at the close of the evidence, but the trial court again overruled it and proceeded to find her guilty of both offenses. The court immediately imposed sentence, ordering Keckler to serve two years in prison on count one consecutive to eleven months in prison on count two. Keckler appeals the trial court's judgment, asserting two assignments of error for our review.
 First Assignment of Error *Page 5 Appellant's convictions for tampering with evidence and possession of criminal tools were against the sufficiency of the evidence in violation of the Fifth and Fourteenth Amendments to the federal constitution and Section 16, Article I of the Ohio constitution.
 Second Assignment of Error Appellant's convictions for tampering with evidence and possession of criminal tools were against the manifest weight of the evidence in violation of the Fifth and Fourteenth Amendments to the federal constitution and Section 16, Article I of the Ohio constitution.
 {¶ 8} Sufficiency of the evidence is a test of adequacy, used to "`determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'"State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, quoting Black's Law Dictionary (6 Ed.1990) 1433; citing Crim.R. 29(A); State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. A conviction based on insufficient evidence constitutes a denial of due process, and the defendant may not be recharged for the offense.Id. at 386-387, citing Tibbs v. Florida (1982), 457 U.S. 31, 45,102 S.Ct. 2211, 72 L.Ed.2d 652, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. In reviewing a claim under the sufficiency of the evidence standard, an appellate court must determine "`whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Page 6 State v. Bridge, 3d Dist. No. 1-06-30, 2007-Ohio-1764, quoting State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668.
 {¶ 9} In the first count, Keckler was charged with tampering with evidence, a violation of R.C. 2921.12(A)(1), which states:
 [n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * * .
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Furthermore, "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). In the second count, Keckler was charged with a violation of R.C. 2923.24(A), which states: "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." *Page 7 
 {¶ 10} Robert Vogel, a patrolman for the Kenton Police Department, was the first witness for the state. (Trial Tr., Mar. 22, 2007, at 3). Vogel testified when he arrived at the mobile home, he spoke with Tyler, who was outside. (Id. at 4-5). Eventually, Coffman called him inside, and he went to the back bedroom where he observed a "large amount" of drug paraphernalia on the floor. (Id. at 7). The drug paraphernalia included syringes, gel tabs, and marijuana roaches. (Id. at 7-8).
 {¶ 11} Glenda Williams was the state's second witness. Glenda testified that she awoke and looked in the back bedroom as she went toward the bathroom. (Id. at 17). She observed Tyler lying on a mattress and Keckler "fixing something underneath a light." (Id.). When Glenda came out of the bathroom, Tyler was not breathing and was turning blue. (Id.). Glenda noticed needles and empty gel tab capsules lying around Tyler's body and watched as Keckler continued to inject a drug into Tyler from the syringe. (Id. at 18). Glenda testified that she asked Keckler, " * * * what did you do? What did you do to my son?" (Id. at 18:7). Glenda stated that Keckler did not respond, but began to "clean up" the bedroom by putting the drug paraphernalia into a paper bag. (Id. at 18). As Keckler was cleaning up the bedroom, Glenda testified that she "called the cops," and made two other phone calls. (Id.). When Glenda later returned to the bedroom with Coffman, she testified that she asked Keckler, "Where's it at?" (Id. at 28). *Page 8 
Glenda testified that Keckler took a paper bag out of the closet and dumped it on the floor. (Id.). Glenda stated that the bag contained "needles and stuff." (Id.).
 {¶ 12} The state's third witness was Marc Coffman, a detective with the Kenton Police Department. (Id. at 30). Coffman testified that when he arrived at Glenda's residence, he recognized Tyler who appeared to be under the influence of illegal drugs. (Id. at 36). When Coffman entered Tyler's bedroom, he stated there was no sign of illegal activity in plain view. (Id. at 39). Glenda, as the owner of the home, gave him consent to search, and he did a quick search, which turned up no evidence. (Id. at 40). Coffman asked Keckler what happened to the drugs, and she responded that she did not know. (Id. at 40; 74). Keckler then stated that she had cleaned up, reached into the closet, pulled out the paper bag, and dumped the contents of the bag onto the rug. (Id. at 40; 76). Coffman testified that he was concerned about Tyler's condition and was afraid that Tyler would stop breathing or go unconscious. (Id. at 64). Coffman therefore concluded that his investigation was impeded by Keckler hiding the evidence since he did not know what drugs Tyler had used. (Id.). Coffman also testified that he did no field tests on any of the drug paraphernalia because he was able to locate only small traces of drugs and was afraid to use the entire samples in his field testing kits. (Id.). Finally, Coffman testified that the dispatch call had originated from a home *Page 9 
on County Road 110, and that the resident at County Road 110 had received a call from a resident at 810 Kohler Street, Glenda's address.
 {¶ 13} Amanda Williams, Glenda's daughter and Tyler's sister, testified on behalf of Keckler. Amanda testified that she was sleeping on the living room couch but was awakened by her mom screaming about Tyler not breathing. (Id. at 97). Amanda stated that Tyler came to after she put ice and water on his face and smacked him. (Id. at 98). She stated that as she tried to revive Tyler, she observed Keckler picking up trash and putting it in a paper bag. (Id. at 98; 106). Amanda stated that Glenda threatened to call the police, but she did not realize Glenda had done so until the police arrived at the mobile home. (Id. at 99; 104).
 {¶ 14} The first element the state must prove to obtain a conviction for tampering with evidence is that the defendant knew "an official proceeding or investigation is in progress, or is about to be or likely to be instituted * * * ." Glenda testified that she saw Tyler turning blue and that he was not breathing. Glenda testified that she went to the living room to call the police. Amanda corroborated Glenda's testimony. While Amanda was in Tyler's bedroom (Keckler was also in the bedroom), she heard Glenda say she was going to call the police. Construing this evidence in favor of the state, as we must, the evidence is sufficient to show that Keckler knew an official investigation or proceeding was about to be or was likely to be instituted. *Page 10 
 {¶ 15} The second element the state must prove is that the defendant altered, destroyed, concealed, or removed any record, document, or thing. In this case, the evidence is clear that Keckler concealed the drug paraphernalia in the paper bag, which she subsequently placed in the closet. Glenda testified that she saw Keckler shooting up Tyler, and she also observed Keckler place drug paraphernalia into the paper bag. Although Amanda could not identify what the objects were, she testified that she observed Keckler putting something in a paper bag. This evidence is sufficient to prove that Keckler concealed drug paraphernalia.
 {¶ 16} The third element the state must prove is that the defendant acted with purpose to impair the value or availability of the evidence in the proceeding or investigation. The testimony was clear that Keckler did not begin to "clean up" the drug paraphernalia until after she had finished shooting up Tyler, and that she continued to do so while Glenda was calling the police. According to Coffman, he searched Tyler's bedroom while Keckler was present. After the search, Coffman asked Keckler where the drugs were. At first, Keckler stated that she did not know, but then she reached into the closet, grabbed the bag, and dumped its contents on the floor. Coffman testified that by hiding the drug paraphernalia, his investigation was impeded because it took extra time to identify which drugs Tyler had been using. This evidence is sufficient to show Keckler's purpose to impede *Page 11 
the investigation by concealing the evidence. Keckler's conviction for tampering with evidence is supported by sufficient evidence.
 {¶ 17} Keckler was also charged with possession of criminal tools. The state alleged that the gel tabs, the syringes, and the paper bag were "criminal tools." Both Glenda and Amanda observed Keckler with the paper bag. Glenda testified that she watched Keckler finish filling a syringe, and that she watched Keckler shoot up Tyler with the contents of the syringe. Glenda also observed Keckler picking up the gel tabs from the floor. This testimony is sufficient to show that Keckler had the gel tabs, syringes, and paper bag under her control.
 {¶ 18} The other element the state must prove is that Keckler acted with purpose to use the items criminally. Unless any of the subsections in R.C. 2923.24(B) apply, the state was required to prove beyond a reasonable doubt that Keckler had criminal purpose. See State v.Anderson (1981), 1 Ohio App.3d 62, 439 N.E.2d 450, at paragraph one of the syllabus. Possession of criminal tools "is not limited to possession with the purpose to commit theft; rather, it is broad enough to includeany criminal purpose as the requisite intent." (Emphasis added.).State v. Talley (1985), 18 Ohio St.3d 152, 156, 480 N.E.2d 439. The state's theory of the case was that Keckler used the bag with intent to tamper with evidence. The state also argued that Keckler possessed the gel tabs and syringes to facilitate drug use. As stated above, Glenda observed Keckler injecting the *Page 12 
contents of a syringe into Tyler, and Tyler subsequently turned blue and stopped breathing. BCII tested some of the gel tabs, one of which tested positive for cocaine. Finally, since Keckler knew the police had been called, she hid the paraphernalia in the paper bag and then placed the bag in the closet. Construing the evidence in the state's favor, it is sufficient to support a conviction for possession of criminal tools. The first assignment of error is overruled.
 {¶ 19} In the second assignment of error, Keckler contends that the convictions for tampering with evidence and possession of criminal tools are against the manifest weight of the evidence. Unlike sufficiency of the evidence, a challenge based on the manifest weight of the evidence requires the court to sit "as a `"thirteenth juror."'Thompkins, at 387, quoting Tibbs, at 42.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990), at 1594. When an appellant challenges a conviction based on the weight of the evidence, the court must review the entire record, weigh the evidence and "all reasonable inferences," consider witness credibility, and determine whether "the jury clearly lost its way *Page 13 
and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. To reverse a conviction based on the manifest weight of the evidence, a unanimous panel of three appellate judges must concur. State v. Michaels, 3d Dist. No. 13-99-41, 1999-Ohio-958, citing Thompkins, at 389. Under this standard, we must determine whether Keckler's convictions for tampering with evidence and possession of criminal tools are supported by the weight of the evidence.
 {¶ 20} The evidence in this case, as well as the applicable law, is established above. Appellant cites several discrepancies in the evidence to support her assignment of error. Specifically, Appellant relies on Amanda's testimony, in which she stated that although Glenda said she was going to call the police, she did not think Glenda actually did so, and she did not actually hear Glenda call the police. Appellant also cites Coffman's testimony that the 9-1-1 call was received from a different address. Coffman indicated that the person who called 9-1-1 had received a phone call from Glenda's residence. Regardless from where the 9-1-1 call was placed, Glenda had clearly announced in Keckler's presence that she intended to call the police.
 {¶ 21} Appellant also relies on inconsistencies as to what happened when Glenda and Coffman went into Tyler's bedroom. Glenda testified that she asked *Page 14 
Keckler where the drugs were, and Keckler immediately retrieved the bag from the closet and dumped its contents on the floor. Coffman testified that he asked Keckler where the drugs were, that she made a denial and then got the bag from the closet and dumped its contents on the floor. Although Coffman and Glenda were in the room together with Keckler, neither witness addressed statements made by the other. The "inconsistencies" cited by Keckler concern credibility and the weight of the evidence. On these issues, we must defer to the fact-finder.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Based on the evidence set forth above and deferring to the trial court on matters of credibility and weight of the evidence, the convictions are supported by the weight of the evidence. The second assignment of error is overruled.
 {¶ 22} Having overruled Appellant's assignments of error, the judgment of the Hardin County Common Pleas Court is affirmed.
Judgment affirmed.
 SHAW and PRESTON, JJ., concur.
[1] Tyler's sister, Amanda Williams, was asleep on the living room couch when her mother began screaming about calling the police. Amanda went into Tyler's bedroom and revived him by putting water and ice on his face and by slapping his face.
[2] Coffman testified that he could not specifically remember if the closet had no door, or if the door was open. However, he was certain that Keckler simply reached into the closet to get the paper bag. *Page 1