OPINION *Page 2 
{¶ 1} Defendant-appellant, Rusty Jordan (hereinafter "Jordan"), appeals the judgment of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} On October 31, 2007, the Marion County Grand Jury indicted Jordan on one count of escape, in violation of R.C. 2921.34, a third degree felony. The charge stemmed from Jordan's violation of postrelease control. Jordan was placed on postrelease control following his release from prison. A jury trial was conducted on January 7-8, 2008. The jury found Jordan guilty of escape. Thereafter, the trial court sentenced Jordan to three years imprisonment.
 {¶ 3} It is from this judgment that Jordan appeals and asserts five assignments of error for our review. For clarity of analysis, we have combined Jordan's first, second, and third assignments of error.
 ASSIGNMENT OF ERROR NO. I THE JURY'S GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 ASSIGNMENT OF ERROR NO. II THE CONVICTION OF ESCAPE WAS NOT SUPPORTED BY SUFFICIENT EVDIENCE
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT DID NOT HAVE THE AUTHORITY TO SENTENCE APPELLANT DUE TO THE FACT THERE *Page 3 WAS A LACK OF PROOF THAT APPELLANT WAS UNDER DETENTION
 {¶ 4} In his first assignment of error, Jordan argues that the jury's verdict was against the manifest weight of the evidence. Jordan argues that: (1) the trial court has to inform the defendant about postrelease control at the sentencing hearing and in the sentencing entry; (2) the prosecution had the burden to prove that Jordan was properly placed on postrelease control; and (3) R.C. 2921.34, the escape statute, requires that the defendant be under detention and since Jordan was not properly under detention, the guilty verdict was erroneous. Further, Jordan argues that "since the Escape statute requires that appellee prove beyond a reasonable doubt that appellant had a specific intention to break or attempt to break detention, and appellant never even understood he was under detention, the jury did clearly lose its way in finding appellant guilty of Escape." (Appellant's Brief at 13).
 {¶ 5} Jordan argues, in his second assignment of error, that since the prosecution presented no evidence that he had been notified about postrelease control at his sentencing hearing that his conviction was not supported by sufficient evidence.
 {¶ 6} In Jordan's third assignment of error, he asserts that since the prosecution presented no evidence that the trial court his notified him of postrelease control at the sentencing hearing the original judgment entry imposing *Page 4 
sentence was void. Thus, Jordan asserts, he was never lawfully sentenced to postrelease control, and the trial court had no authority to sentence him on the escape.
 {¶ 7} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 8} However, when determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quotingState v. Martin (1983), 20 Ohio App. 3d 172, 175, 485 N.E.2d 717.
 {¶ 9} Jordan was convicted of escape, under R.C. 2921.34, which provides:
 (A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose *Page 5 or limited period, or at the time required when serving a sentence in intermittent confinement.
 * * *
"Detention" is defined, in pertinent part, to include: "* * * supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution * * *". R.C. 2921.01(E). See also, State v. Boggs, 2nd Dist. No. 22081, 2008-Ohio-1583, ¶¶ 12-14 (a person on post release control is under detention for purposes of the escape statute).
 {¶ 10} At the trial, Jeremy Hecker, an Adult Parole Authority employee and Jordan's parole officer, testified that Jordan had been in prison at North Central Correctional Institution in Marion. (Tr. 1/7/08-1/8/08 at 91-92). Hecker testified that Jordan was on parole for Marion County Common Pleas Court Case Number 05 CR 438, and identified State's Exhibit Number 5, the journal entry from that case. (Id. at 92). The aforementioned case involved: possession of cocaine, a fifth degree felony; vandalism, a fifth degree felony; two forgeries, both fifth degree felonies; and receiving stolen property, a fourth degree felony. (Id. at 83); (State's Ex. 5). Hecker testified that Jordan was placed on postrelease control because he owed restitution. (Id. at 94).
 {¶ 11} Hecker checked the address that Jordan was going to be living with his mother at 311 Olney Avenue in Marion and approved the address. (Id. at 94-96, 101). Jordan's mother called Hecker and informed him that she had moved to *Page 6 
an apartment at 243 West Pleasant Street, and Hecker approved the apartment over the phone. (Id. at 104). Hecker testified that on December 13th Jordan signed a paper with his monitored time conditions listed. (Id. at 108); (State's Ex. 2B). Hecker testified that he explained various things to his parolees including: "if they abscond supervision [they] can and probably will be charged with the offense of Escape." (Id. at 109).
 {¶ 12} On December 18, 2006, Hecker received a telephone call from the Marion Police Department. (Id. at 112). Later, Jordan was arrested and Hecker placed him on an APA hold. (Id.). Hecker then issued Jordan a written sanction, which indicated that Jordan's postrelease control was bumped up from monitored time to basic supervision. (Id. at 113). On December 26th, Hecker reviewed the basic conditions of supervision with Jordan, and Jordan signed the document. (Id. at 120); (State's Ex. 6). The third condition of supervision provided: "I understand if I'm a releasee and abscond supervision I may be prosecuted for a crime of Escape under Section 2921.34 of the Revised Code." (Tr. 1/7/08-1/8/08 at 117); (State's Ex. 6). The conditions also included that Jordan was to report to Hecker the first Wednesday of every month. (Id. at 119); (Id.).
 {¶ 13} Jordan reported on January 3rd, February 7th, March 7th, and April 4th at the old warden's house in front of the North Central Correctional *Page 7 
Institution. (Tr. 1/7/08-1/8/08 at 122-125).[1] Hecker testified that on April 18th, Patrolman Zacharias "advised he was at the offender's residence and nobody would answer the door. He thought the offender might be in there. He advised the landlord was there and the door was unlocked." (Id. at 126). Hecker went to Jordan's residence with Patrolman Zacharias and searched the residence for Jordan. (Id.). Thereafter, Hecker "faxed an Order to Arrest to the Police Department and the Sheriffs Department." (Id. at 127).
 {¶ 14} On May 2nd, Jordan reported for his visit and was arrested. (Id. at 127). Hecker testified "I actually applauded him for reporting when he probably knew he was gonna be arrested, and I explained to him at that time that he did the right thing because if he runs from me it is Escape." (Id. at 127). Jordan was released on June 4, 2007. (Id. at 128).
 {¶ 15} Hecker testified that Jordan reported for his scheduled visit on June 6th. (Id. at 128). According to Hecker, Jordan was instructed to report on July 3, 2007 at the Multi-County Jail because the white house, which was used for reporting, was being used for training. (Id. at 129). Hecker testified that a note was placed on the door instructing people to report to the jail. (Id. at 129). Jordan did not report as directed. (Id. at 129). Hecker went to Jordan's residence but did not make any contact with Jordan. (Id. at 129). Hecker left his business card at *Page 8 
the residence. (Id. at 129-30). According to Hecker, Jordan called him and said that he forgot to report, so Hecker told Jordan to report on July 18th at the jail. (Id. at 130).
 {¶ 16} On July 18th, Patrolman Zacharias called and informed Hecker that they were looking for Jordan due to another incident. (Id. at 131). Jordan did not report on July 18th. (Id. at 131). That same day, Hecker faxed an order to arrest to both the police department and the sheriffs department. (Id. at 131-32).
 {¶ 17} On August 5th, Hecker and the Police Department went to Jordan's residence at 243 West Pleasant Street and made contact with Jordan's mother. (Id. at 132). According to Hecker, Jordan's mom stated that "he wasn't there and hadn't been staying there," and she advised that he may be at a different residence. (Id.). However, they did not locate Jordan at that address either. (Id.). Hecker was advised that Jordan was hanging out with Ryan Nelson, and they contacted Nelson who said that he was not there. (Id. at 133).
 {¶ 18} On August 9th, Hecker received a voice mail from Jordan stating that he had gone to the sheriffs department, and they did not have a warrant for him. (Id.) Jordan left a telephone number and Hecker called that number but got an answering machine, and so, he left a message telling Jordan to turn himself in at the Marion Police Department because there was a local order to arrest. (Id.). *Page 9 
Hecker testified that Jordan did not turn himself in and did not report in August. (Id. at 134).
 {¶ 19} On August 17th, Hecker and Patrolman Cox went to Jordan's APA approved residence at 243 West Pleasant Street and made contact with a neighbor who said that Jordan and his family moved out. (Id. at 134). Hecker and Patrolman Cox went up to the apartment, and it was completely empty. (Id.) Hecker testified that Jordan had not notified him that he had changed his residence. (Id.)
 {¶ 20} On August 20th, Jordan was officially declared "whereabouts unknown," and Hecker sent an e-mail requesting a statewide warrant. (Id. at 135). On October 12th, Hecker received an e-mail advising him that Jordan was residing at 554 Wilson Street, and he forwarded the e-mail to the police department. (Id. at 136). Later, Hecker was informed that Jordan was arrested at 554 Wilson Street. (Id. at 136-7).
 {¶ 21} On cross-examination, Hecker testified that he had previously come into contact with Jordan when he was at Owens Street Apartments looking for someone else, and Jordan had cussed at him and other people and called them "pigs." (Id. at 141). Hecker testified that if someone in Marion wanted to call him that it would be a long distance telephone call. (Id. at 141-42). Hecker testified that to his knowledge Jordan had not been out of the county. (Id. at 151). *Page 10 
 {¶ 22} On redirect examination, Hecker testified that the other 80 or 90 people that he supervised were able to find him after the reporting location changed to the Multi-County Jail. (Id. at 154-56).
 {¶ 23} Patrolman Keith Cox, employed by the Marion City Police Department, testified that he assisted Hecker in looking for Jordan at 243 West Pleasant Street on August 17, 2007. (Id. at 160). Patrolman Cox testified that he was "advised by a neighbor that the people in the apartment had moved out." (Id. at 160). According to Patrolman Cox, the apartment was empty. (Id. at 161).
 {¶ 24} Donnie Lutz, the maintenance manager at West Pleasant street, testified that Cindy Jordan, Ryan Johnson, and Marty Madison were listed on the lease, and they moved out approximately the second week of August. (Id. at 163). On cross-examination, Lutz testified that the roof of the apartment had been leaking in the apartment occupied by the Jordans. (Id. at 165).
 {¶ 25} Jon Shaffer, a lieutenant at the Marion Police Department, testified that he received information that Hecker was looking for Jordan, and he along with three other police officers attempted to locate Jordan at an address given to them. (Id. at 84-85). When he arrived at the residence, he noticed a couple of children playing out back, and he walked to the front of the house where other officers were knocking on the door. (Id. at 86). No one answered the door. (Id.). Shaffer walked around to the back of the house to say something to the children *Page 11 
when someone waived the children inside the residence. (Id.) The police knocked on the front door several times, rang the doorbell, and knocked on the back door. (Id.) Shaffer then yelled at the window that they were looking for Jordan and he needed to come to the door. (Id.). Shaffer testified that Jordan came to the door and was arrested. According to Shaffer, the police found Jordan at 554 Wilson Street in Marion. (Id. at 87).
 {¶ 26} On cross-examination, Shaffer testified that Hecker wanted Jordan arrested on a parole violation but he was not aware of a warrant. (Id. at 87). Shaffer testified that he did not believe that Jordan gave anyone any trouble when he was picked up by the police. (Id. at 88). According to Shaffer, there was no indication how long Jordan had resided at that residence. (Id.).
 {¶ 27} The defense presented the testimony of Jason Dutton, Randy Spencer, Cindy Murray Jordan, and Jordan. Jason Dutton and Randy Spencer both work at the Marion County Sheriffs Department and testified that they did not recall Jordan coming into the sheriffs department. (Id. at 179, 181).
 {¶ 28} Cindy Murray Jordan, Jordan's mother, testified that Hecker came to the apartment and said that he had a warrant for Jordan's arrest. (Id. at 184-86). Cindy testified that she took Jordan to the sheriff's department on August 8, they checked the computers and the search took 15 to 20 minutes, however, there was not a warrant. (Id.). Further, Cindy testified that if Jordan "wasn't in jail then he *Page 12 
was living with me on West Pleasant. And then August 11th we moved over on Wilson." (Id. at 188). Cindy testified that they moved because the roof leaked and there were health problems there. (Id.).
 {¶ 29} Jordan testified that on December 12, 2006, he was released from the penitentiary. (Id. at 205). Jordan testified that he found out that he was going to be on postrelease control approximately two weeks before his release date. (Id. at 205). Jordan testified that he called Hecker upon his release and met him at the Multi-County Jail. (Id.). During the meeting, Hecker said that he remembered him from a past "run in." (Id. at 206). Jordan signed papers and "got out of there." (Id.).
 {¶ 30} Jordan testified that he missed his reporting on July 3rd and called Hecker to tell him that he missed because there was no one there. (Id. at 207). Jordan testified that Hecker did not verbally tell him that they were going to be meeting at the Multi-County Jail. (Id.). Further, Jordan testified that he did not "have the knowledge that they could put a new felony Escape on [him]." (Id. at 208).
 {¶ 31} On cross-examination, Jordan testified that he did not report to the Multi-County Jail nor the white house on July 18th. (Id. at 219). Jordan further testified that he did not report in August. (Id. at 220). Jordan testified that he went to the sheriffs department on August 8th. (Id. at 220). Jordan testified that *Page 13 
he called Hecker and left a message with a phone number, and that he had no recollection of receiving a message from Hecker. (Id. at 222). Additionally, Jordan testified that he did not report in September or October and that he did not report for forty eight days. (Id. at 222-23). Jordan also testified that he moved but did not tell Hecker where he was living. (Id. at 224). Jordan stated:
 * * * I'm saying that I never left Marion County. I never jumped no walls. I never ran from the police when they come to arrest me. I come out the door with my hands up. I done nothing in an Escape formality. I absolutely did not. I did not report and I changed my address and I've been held accountable for that at the Multi-County Jail.
(Id. at 226).
 {¶ 32} The Ohio Supreme Court has held:
 [w]hen a trial court fails to notify an offender that he may be subject to postrelease control at a sentencing hearing, as required by former R.C. 2929.19(B)(3), the sentence is void; the sentence must be vacated and the matter remanded to the trial court for resentencing. The trial court must resentence the offender as if there had been no original sentence. When a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void. The offender is entitled to a new sentencing hearing for that particular offense.
State v. Bezak, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 16. However, in order to convict Jordan of escape, the prosecution did not need to prove beyond a reasonable doubt that Jordan wasproperly under detention, but rather, that Jordan knew he was under detention or that he was being reckless in *Page 14 
that regard. R.C. 2921.34; State v. Howard (1969), 20 Ohio App.2d 347,254 N.E.2d 390 (escape conviction is not affected by the validity of the sentence which the defendant was serving at the time of the defendant's escape).
 {¶ 33} Both Hecker and Jordan's testimonies show that Jordan knew that he was on postrelease control. Jordan testified that he was informed that he was going to be on postrelease control prior to being released from the penitentiary, and he contacted Hecker after being released. (Tr. 1/7/08-1/8/08 at 205). Hecker testified that Jordan initially reported as required, and he signed paperwork regarding postrelease control. (Id. at 120, 122-125); (State's Ex. 6). Further, Jordan purposely broke or attempted to break the detention when he violated his postrelease control by not reporting to his parole officer in July or August.[2]
 {¶ 34} After viewing the record, in a light most favorable to the prosecution, we find that a rational trier of fact could find all of the elements of escape beyond a reasonable doubt. Additionally, we cannot find that the jury lost its way or created a manifest miscarriage of justice when it found Jordan guilty of escape. Finally, based on our previous finding that the prosecution did not need to prove that Jordan was properly under detention, we find that the trial court was authorized to sentence Jordan for escape. *Page 15 
 {¶ 35} Jordan's first, second, and third assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV THE TRIAL COURT ERRED BY GIVING A CONFUSING JURY INSTRUCTION ONESCAPE.
 {¶ 36} In his fourth assignment of error, Jordan maintains that the trial court erred by providing a confusing jury instruction on escape.
 {¶ 37} Crim. R. 30(A) provides, in pertinent part: "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." The failure to object to jury instructions constitutes a waiver of that issue absent plain error.State v. Bridge, 3d Dist. No. 1-06-30, 2007-Ohio-1764, ¶ 19, citingState v. Underwood (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332. "Under the plain error standard, the appellant must demonstrate that, but for the error, the outcome of his trial would clearly have been different." Id. at ¶ 20, citations omitted.
 {¶ 38} In the present case, the prosecution objected to the jury instruction before the jury retired to reach a verdict; however, the defense did not object to the jury instruction. In fact, defense counsel indicated that he did not see it as damaging to the defense. (Tr. 1/7/08-1/8/08 at 268). Since the defense did not *Page 16 
object to the jury instruction, the defense waived the issue absent plain error. Bridge, 2007-Ohio-1764, at ¶ 19, citing Underwood,3 Ohio St.3d at 13.
 {¶ 39} Jordan has not demonstrated that the outcome of his trial would have been different if the trial court's jury instructions had been different. As previously noted, Jordan testified that he failed to report in July and August. (Id. at 119-20). Accordingly, Jordan has failed to meet the plain error standard of review.
 {¶ 40} Jordan's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 41} Jordan argues that he was denied effective assistance of trial counsel. Specifically, Jordan argues that his trial counsel was ineffective because trial counsel: (1) failed to join the prosecutor in requesting a modification of the jury instruction; (2) failed to move for dismissal of the case because there was no proof that Jordan was informed at the original sentencing hearing about postrelease control; (3) failed to object to hearsay evidence; and (4) failed to object to evidence that was irrelevant and prejudicial.
 {¶ 42} "It is well-settled that in order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the *Page 17 
deficient performance prejudiced the defense." State v. Price, 3d Dist. No. 13-05-03, 2006-Ohio-4192, ¶ 6, citing State v. Kole (2001),92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. "To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different." Id., citing State v.Strickland, 466 U.S. at 687.
 {¶ 43} "In order to show that an attorney's conduct was deficient or unreasonable, the appellant must overcome the presumption that the attorney provided competent representation by showing that the attorney's actions were not trial strategies prompted by `reasonable professional judgment.'" Id. at ¶ 7, citing Strickland, 466 U.S. at 687. "`Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance.'" Id., quoting State v. Sallie (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267, citing State v. Thompson (1987), 33 Ohio St.3d 1, 514 N.E.2d 407.
 {¶ 44} First, Jordan maintains that his trial counsel was ineffective for not joining the prosecution's request to modify the jury instruction. However, Jordan's trial counsel's decision not to join in the prosecution's objection to the jury instruction was a matter of trial strategy, and thus, does not constitute *Page 18 
ineffective assistance of counsel. Price, 2006-Ohio-4192, at ¶ 7, citing Strickland, 466 U.S. at 687.
 {¶ 45} Second, Jordan maintains that trial counsel was ineffective for failing to file a motion to dismiss because the prosecution presented no proof that he was informed about postrelease control at his original sentencing hearing. However, in Jordan's second assignment of error, we determined that there was sufficient evidence for Jordan to be convicted of escape. As a result, there is not a reasonable probability that the outcome of the trial would be different but for trial counsel's failure to file a motion to dismiss.
 {¶ 46} Third, Jordan claims that trial counsel was ineffective for failing to object to hearsay evidence including Patrolman Zacharias' testimony that: Cindy stated that Jordan had not been staying at her residence; about an e-mail he received regarding an anonymous call about where Jordan had been residing; and that Cindy told him that Jordan needed help. In addition, Jordan claims that Patrolman Cox testified regarding a neighbor's statements and trial counsel was ineffective for not objecting. Finally, Jordan claims that trial counsel was ineffective for failing to object when the maintenance manager testified that a neighbor said Jordan and his family moved, and that he had never seen Jordan at the residence. *Page 19 
 {¶ 47} Hearsay evidence is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). However, the aforementioned evidence does not constitute hearsay evidence as the evidence was not admitted to prove the truth of the matter asserted, but rather, to show why Hecker and the police officers took the steps that they did.
 {¶ 48} In addition, Jordan has failed to establish that the outcome of his trial would have been different but for the aforementioned testimony.
 {¶ 49} Fourth, Jordan maintains that his trial counsel was ineffective for failing to object to irrelevant and prejudicial evidence. Jordan maintains that the bill of particulars provided that the most serious offense that he was convicted of was a fifth degree felony, but the jury instructions and the written verdict form stated that the most serious offense was a fourth degree felony. Jordan also maintains that the bill of particulars did not include anything about him failing to inform Hecker about a new address, and trial counsel was ineffective for failing to object. In addition, Jordan maintains that trial counsel failed to object when the prosecution asked whether any of Hecker's other parolees had any difficulty reporting at the new location. Finally, Jordan maintains that trial counsel was ineffective for failing to object to Cindy's testimony, on cross-examination, that she told Hecker that she thought that Jordan was using drugs again. *Page 20 
 {¶ 50} Under the escape statute, the level of offense depends upon the level of the offense with which the defendant was under confinement when he escaped. See R.C. 2921.34. Regardless of whether Jordan was under detention because of a fourth degree offense or a fifth degree offense, the crime of escape would constitute a third degree felony. R.C. 2921.34(C)(2)(b). Thus, Jordan has not shown that there is a reasonable probability that, but for his trial counsel's performance, that the result of his proceeding would have been different.
 {¶ 51} Further, the fact that trial counsel failed to object on the basis that the bill of particulars does not contain anything about Jordan failing to inform his parole officer about changing his residence does not establish ineffective assistance of counsel in this case. Jordan testified that he failed to report, as required, on July 18th and in August, and this conduct is sufficient for an escape conviction. Thus, Jordan has failed to show that the outcome of his trial would have been different, but for, his trial counsel's conduct.
 {¶ 52} Finally, Jordan has failed to demonstrate that but for his trial counsel's failure to object regarding Cindy's testimony the result of his trial would have been different. Thus, Jordan has failed to establish that he was provided ineffective assistance of trial counsel.
 {¶ 53} Jordan's fifth assignment of error is overruled. *Page 21 
 {¶ 54} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, J.J., concur.
[1] The old warden's house is also referred to as the "white house" in this opinion.
[2] The Bill of Particulars alleges that Jordan failed "to report to his parole officer on July 3, 2007 and/or July 18, 2007 and/or August 8, 2007." *Page 1